**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 06-545-03 |
| | : | |
| v. | : | |
| | : | CIVIL ACTION NO. 08-3522 |
| MAURICE FELDER | : | |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                           November 30, 2009

In his motion under 28 U.S.C. § 2255, Maurice Felder claims his trial counsel was ineffective in his "lack of trial preparation and deficient trial performance," and for failing to file an appeal. Because his trial counsel's performance was not deficient and he was not prejudiced by any failure on counsel's part, the motion will be denied.

**Factual and Procedural History**

In the morning of January 8, 2006, Felder and two accomplices entered the Exxon Mobil convenience store at 3101 North Broad Street in Philadelphia, Pennsylvania. The store clerk, Asim Shazad, recognized Felder and his cohorts as regular customers. Felder asked Shazad for a cigar, received one, and then went outside by the front window. While Felder paced at the entrance of the store, one of his accomplices, Brandon Kellam, distracted Shazad while the other, Qouirtese Sherman, brandished a handgun and forcibly entered the cashier's booth. Sherman struck Shazad several times. Frustrated by his inability to open the cash register, Sherman then shot Shazad three times. When shots rang out, Felder ran from the area. The incident was captured on a surveillance videotape.

Felder was charged with conspiracy to commit Hobbs Act robbery[1], Hobbs Act robbery[2], and using and carrying a firearm during and in relation to a crime of violence.[3] On March 28, 2007, following a jury trial, Felder was acquitted of the gun charge and found guilty of the conspiracy and robbery charges. On July 31, 2007, facing a custodial guidelines range of 210 to 262 months, he was sentenced to 162 months imprisonment.

Felder did not file a direct appeal. On December 24, 2007, he filed his first motion under 28 U.S.C. § 2255, claiming his counsel was ineffective. He withdrew that motion. He later filed a new § 2255 motion on July 25, 2008. In his renewed motion, Felder contends that prior to trial, his counsel failed to: (1) review the videotape with him; (2) file a "pretrial motion on defense issues"; (3) subpoena witnesses; and (4) request forensic and scientific reports. He also claims counsel was deficient because he prevented him from testifying, failed to request a psychological evaluation and failed to file a notice of appeal.

At the hearing on April 28, 2009, at which he was represented by court appointed counsel, Felder withdrew his contentions that his trial counsel was ineffective for failing to subpoena forensic reports and for failing to seek a psychological opinion to support a downward departure from the sentencing guidelines on the ground that he suffers from bipolar disorder. Both Felder and his trial attorney testified at the hearing.

## Discussion

Ineffective assistance of counsel claims are evaluated under the familiar two-part standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Williams v.*

---

[1] 18 U.S.C.§ 1951(a)

[2] 18 U.S.C.§ 1951(a) and 2

[3] 18 U.S.C.§ 924(c)(1) and 2

*Taylor*, 529 U.S. 362, 391 (2000). First, the petitioner must demonstrate that his attorney's performance was deficient, that is, "counsel's representation fell below an objective standard of reasonableness," considering all of the surrounding circumstances of the particular case and the facts viewed at the time of counsel's conduct. *Strickland*, 466 U.S. at 687-89. Second, he must show that the deficiency prejudiced his defense. *Id.* at 692. The prejudice prong requires a showing that as a result of the deficient representation, a reasonable probability exists that the result of the proceedings would have been different. *Id.* at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id*. In other words, the prejudice component focuses on whether counsel's deficient performance renders the result of the proceedings unreliable or fundamentally unfair. *Williams*, 529 U.S. at 393, n.17.

### The Videotape

Felder contends that his trial counsel was ineffective because he failed to review the surveillance videotape with him prior to trial. He does not contend that counsel himself did not view the videotape in preparing for trial.

Felder presented no evidence as to how counsel's alleged failure to review the videotape with him before trial prejudiced his case or affected counsel's performance at trial. Contrary to Felder's implication, counsel's trial strategy relied heavily on the videotape. The defense theory was that Felder was an innocent bystander and the tape supported that position. Counsel argued this point during his opening and closing arguments. He also aggressively cross-examined Shazad on the issue and emphasized perceived inconsistencies between the tape and Shazad's testimony. Counsel also noted that the tape did not show Felder communicating with Sherman or Kellam prior to the robbery or

3

that he had any connection to the robbery:

> Where is anything [Felder] did out of the ordinary that suggests that he was in league with these two other fellows? He comes in like he always does, buys a cigarette or coke like he always does, goes outside. He hears a shot, he runs . . . . Is this man guilty because he runs away when he hears gunshots? Of course not. [The government] is asking you to speculate. And I suggest to you, ladies and gentlemen, that you cannot. (Tr. day 3, p. 47, line 5-15)

Counsel's arguments reflected Felder's defense. During deliberations, the jury twice requested that the tape be replayed. Eventually at their request, the jurors were permitted to replay the video for themselves. As directed by defense counsel, the jury placed significant importance on the videotape and carefully weighed the evidence.

There is nothing more that counsel could have learned from viewing the videotape with Felder prior to trial. Counsel viewed the tape on his own while he prepared for trial, and Felder admitted to having discussed the tape's contents with him. Indeed, at the hearing, Felder testified that he did not need to see the videotape for his own benefit in advance of trial because he "was there" and "knew what was on the tape." Rather, Felder wanted to review the tape with counsel solely for counsel's benefit. Counsel's performance at trial demonstrated a complete grasp of the contents of the tape, its importance, and its nuances. Therefore, counsel was not deficient and Felder suffered no prejudice from trial counsel's not having reviewed the videotape with him.

### Pre-Trial Motions and Subpoenas

Felder's claim that counsel "failed to file pretrial motion[s] on defense issues [and] subpoenaed no witnesses for trial" fails for lack of specificity. Felder does not state whom counsel should have subpoenaed, what motions should have been filed, what scientific

4

reports should have been examined, or which evidence should have been challenged in pre-trial motions.

In order to establish prejudice, petitioner must articulate some factual basis giving rise to an inference that a "reasonable probability" exists that the outcome of the trial would have been different but for counsel's ineffectiveness. *Strickland*, 466 U.S. at 694. It is not enough to simply present a "vague and conclusory" pleading. *Johnson v. United States*, 294 Fed. Appx. 709, 710 (3d Cir. 2008).

During the evidentiary hearing, Felder was given ample opportunity to flesh out his generalized claims and to identify what specific items of evidence he contends should have been suppressed or what motions should have been filed. He could identify none.

Felder did complain that, rather than suppressing the videotape, he wanted trial counsel to publish to the jury a portion of the store's tape recording of events before the robbery, which, according to Felder, would have shown him having entered the store earlier in the day of the robbery. Because this evidence would have buttressed the government's claim that Felder was a lookout who was casing the store, its playing would not have aided Felder. In any event, that specific recording no longer existed.[4]

Felder also contested counsel's decision not to challenge the photo array from which Shazad identified him. Felder claims the array was unduly suggestive because he was the only person in the array who had a zebibah on his forehead.[5] This argument, without

---

[4] The portion of the tape had been deleted by the company that maintains the security system and not by the government. The deletion occurred in the regular course of recycling the tape.

[5] "The zebibah, Arabic for raisin, is a dark circle of callused skin, or in some cases a protruding bump, between the hairline and the eyebrows. It emerges on the spot where worshipers press their foreheads into the ground during their daily prayers." Michael Slackman, *Fashion and Faith Meet, on Foreheads of the Pious*, N.Y. Times, Dec. 18, 2007, at A4.

context, appears compelling. However, because Felder was well known to Shazad, it fails.

A photo array or other identification process may not be "impermissibly suggestive." *See Neil v. Biggers*, 409 U.S. 188, 197 (1972). "[T]he central question [is] whether under the 'totality of the circumstances' the identification was reliable even [if] the confrontation procedure was suggestive." *Id*. at 199. By Felder's own admission, Shazad had known him for at least a year and they were so familiar that Shazad often sold Felder goods on credit. Any suggestiveness in the photo array was inconsequential given Shazad's lengthy prior relationship with Felder and the defense theory that Felder was an innocent bystander. *See United States v. Spotted Elk*, 548 F.3d 641, 665 (8th Cir. 2008). Significantly, the photo identification was not introduced at trial.

Felder argues that counsel was deficient for having failed to call several witnesses. The only person he identified as a potential witness was Kellam, his co-defendant and accomplice. According to Felder, Kellam would have testified that Felder did not know that a gun was going to be used in the robbery. Kellam's testimony, if he testified as Felder says he would have, would not have extricated Felder from the robbery plan, but would have only offered a possible defense on the gun charge. Counsel's decision not to call Kellam, an accomplice who would have likely implicated Felder in the robbery, was reasonable under the circumstances. In any event, Felder was acquitted of the gun charge without Kellam's testimony. Thus, calling Kellam was a risk that trial counsel reasonably did not want to take, and Felder suffered no prejudice because he was acquitted of the gun charge.

## Right to Testify

Felder claims that "despite his repeated request [sic] to testify his counsel prevented him from doing so . . . ." (Defendant's Motion at 20). The government responds that petitioner was aware of his right to testify and knowingly waived it.

A defendant's right to testify is personal to the defendant and may not be waived by counsel. *United States v. Leggett*, 162 F.3d 237, 245 (3d Cir. 1999) (citing *United States v. Pennycooke*, 65 F.3d 9, 10 (3d Cir. 1995). The testimony at the evidentiary hearing established that Felder himself, not his attorney, made the choice not to testify.

At the hearing, Felder testified that his trial counsel told him that he thought it was "best" if he did not testify. According to Felder, when he told counsel that he thought his testimony would sway the jury, counsel told him that he "does not want [Felder] to testify." At the evidentiary hearing, trial counsel testified that he "advised him . . . [he] thought [that Felder's testimony] would be detrimental to his case and he accepted that advice." Felder stated that he would have insisted on testifying had he known that he could have overruled his attorney. Felder's testimony was not credible.

At the close of the trial while the jury was deliberating, Felder was asked if he had any issues with trial counsel. He stated that he had none.

> THE COURT: Are you getting along with [trial counsel]?
> MR. FELDER: Yeah. At the moment I am.
> Q: You are all right?
> A: Yes, sir.
> Q: Did he do what you wanted?
> A: Yes, sir.
> Q: All right. No complaints?
> A: The only thing -- the only complaint that I see was that the prosecutor's argument he made it seem like I had a gun in my hand but you cleared that up so it ain't no more.

7

| | | |
|---|---|---|
| Q: | | So you don't have a problem with it. |
| A: | | He good. (Tr. day 3, 93, Mar. 27, 2007) |

Even now he does not dispute that his attorney gave him advice, but that the choice was his. Thus, the ultimate decision not to testify was made by Felder in consultation with his counsel.

## Notice of Appeal

Felder's last claim is that counsel was ineffective for failing to file a notice of appeal. After sentence was imposed, Felder was explicitly informed of his right to appeal. During that colloquy, he instructed counsel not to file a notice of appeal. (Sent. Tr. 53-54). Felder does not deny telling his attorney that he did not want to appeal. He now claims that he changed his mind. Counsel testified that he never received any communication from Felder or anyone else regarding the taking of an appeal. The last instruction he had received was not to file an appeal.

An attorney's failure to file a timely appeal at his client's specific request is *per se* unreasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Prejudice is presumed. *Id*. at 485. A petitioner need not prove that his appeal would have likely succeeded. *Peguero v. United States*, 526 U.S. 23, 28 (1999).

The ten-day period to decide whether to file a notice of appeal was not waived by Felder's in-court statement that "[n]o appeal" should be filed. (Sent. Tr. 54). A specific request to file a notice of appeal, even if it follows a prior request not to file one, imposes upon counsel the duty to perfect an appeal. Therefore, if Felder made a timely request to his attorney to file an appeal even after initially expressing a desire not to take one, counsel's performance was deficient.

Failure to file an appeal upon the defendant's request is *per se* ineffective. Disregarding specific instructions to file a notice of appeal is professionally unreasonable. *Flores-Ortega*, 528 U.S. at 477. "Counsel's failure to do so can not be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." *Id*.

In a case where there is not an express request to file an appeal, the question is whether counsel breached his constitutional duty to consult with the defendant regarding an appeal. *Harrington v. Gillis*, 456 F.3d 118, 125 (3d Cir. 2006). Counsel has a duty to consult with a defendant regarding an appeal "when there is reason to think . . . that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or [when there is reason to think] that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega,* 528 U.S. at 480; *see also Solis v. United States*, 252 F.3d 289, 293 (3d Cir. 2001); *Lewis v. Johnson*, 359 F.3d 646 (3d Cir. 2004). Where "counsel [is] unsure about [a defendant's] wishes . . . any doubt . . . should be] resolved in favor of appeal." *Hodge v. United States*, 554 F.3d 372, 380 (3d Cir. 2009).

Consultation means more than a cursory discussion. *Id*. Consulting consists of "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478.

Felder satisfies neither basis for imposing a duty upon counsel to consult with him regarding an appeal. Trial counsel had no reason to believe that Felder wanted to take an appeal in light of Felder's explicit desire not to take one. Additionally, there was nothing

that would have led counsel to believe that there was any basis for appealing the conviction. In other words, Felder has not established that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484. Certainly, if there were appealable issues apparent to counsel, he had a duty to advise the defendant that there were grounds for appeal and he should reconsider his desire not to take an appeal. That was not the case here.

During the evidentiary hearing, Felder testified that he and his relatives had made several attempts to contact his trial counsel to instruct him to file a notice of appeal. He never stated that anyone actually communicated his desire to take an appeal to counsel. On the contrary, counsel testified credibly that he received no such communications. Felder presented nothing to rebut his attorney's testimony and no member of Felder's family testified. Having had the opportunity to assess the demeanor and credibility of the witnesses, I find that Felder never made a timely request of his attorney to take an appeal after specifically instructing him not to file one.

## Certificate of Appealability

In a § 2255 action, a certificate of appealability may only be issued if the petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He has not done so. Thus, a certificate of appealability will be denied.